# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3314 | **DATE** | 2/18/2004 |
| **CASE TITLE** | Gerald O. Straugh vs. American College of Surgeons | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. As to the Strauch motions, docket numbers 88-1, 89-1, 90-1, 93-1 and 94-1 are granted. Docket 91-1 is granted in part and denied in part. As to defendants' motions docket numbers 87-1, 87-2 and 87-5 are denied. Docket number 87-4 is denied in the generic form in which it has been presented. Docket numbers 87-3, 87-9 and 87-10 are denied without prejudice to their possible reassertion in more particularized form at trial. Docket Nos. 87-6 and 87-7 are granted in part and denied in part. Docket No. 87-8 is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 19 2004 | |
| | Notified counsel by telephone. | | date docketed | 100 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/18/2004 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GERALD O. STRAUCH, M.D., )
)
          Plaintiff, )
)
v. ) No. 02 C 3314
)
AMERICAN COLLEGE OF SURGEONS, )
)
          Defendant. )

DOCKETED
FEB 1 9 2004

## MEMORANDUM OPINION AND ORDER

On December 23, 2003 this Court held a pretrial conference with the parties' counsel during which it approved their jointly submitted Final Pretrial Order ("FPTO"). In part the minute order entered on the same date also set a timetable for the parties' cross-submissions of (1) their respective motions in limine and (2) their responses to those motions. Seven motions by plaintiff Dr. Gerald O. Strauch ("Strauch") and ten by defendant American College of Surgeons ("College") and its codefendant Staff Members' Retirement Plan ("Plan")[1] have eventuated, and with the parties' responses now in hand the several motions can be addressed.

### Strauch's Motions

Strauch's first motion (Dkt. No. 88-1) seeks to bar any argument or evidence as to criticisms of Strauch's performance as a director for College. College responds that Strauch has put

---

[1] To avoid the constant repetition of "College and the Plan" in referring to their motions and responses, this opinion will simply use "College" (treated as a singular noun) as a collective term denoting both defendants.

that subject in issue by his rejection of a proposed stipulation that his performance had been satisfactory, so that College now seeks to offer evidence as to a number of claimed performance deficiencies during the last few years of Strauch's employment that had assertedly been overlooked because he had made his intention to retire known to College.

College asserts that Strauch cannot have it both ways by adducing evidence as to his claimed exemplary performance while at the same time barring any evidence to the contrary. That contention is persuasive--but it cuts in both directions. Because the substantive battleground mapped out by the litigants focuses on the other issues that this Court has dealt with in its prior opinions, any controverted testimony about the quality of Strauch's performance would really be a digression diverting attention from the true substantive issues in the case.

Accordingly Strauch's first motion is granted, but on condition that neither side will be permitted at trial to bring into evidence the quality (or asserted lack of quality) of his performance. This does not of course prevent either or both sides from apprising the jury that the nature and quality of Strauch's services played no part in College's decision to terminate him.

Strauch's second motion (Dkt. No. 89-1) relatedly seeks the exclusion of any memoranda prepared after his employment was terminated, or after this litigation was begun, that addressed

alleged deficiencies in Strauch's performance (as well, of course, as asking to bar any testimony in that respect). What has already been said as to the earlier motion applies here with equal force and calls for the same ruling. Hence that motion is also granted.

As for whether those memoranda may be used for possible impeachment purposes, as College urges in its response, that contingency is not ripe for current decision. Although any such possibility would seem to implicate potential hearsay or other problems, it would be perilous to address that subject in the hypothetical vacuum that now exists, as contrasted with dealing with the matter in the trial environment.

Strauch's third motion (Dkt. No. 90-1) seeks to bar the introduction of evidence as to (and hence any reference to) College's affirmative defense of Strauch's asserted failure to mitigate damages. That was the sole affirmative defense that survived this Court's ruling embodied in its July 14, 2003 minute order. But it is well established that the FPTO, focusing as it does in detail on the matters to be dealt with at trial, supersedes the pleadings in the case in that respect (see, e.g., such cases as Marschand v. Norfolk & W. Ry., 81 F.3d 714, 716 (7th Cir. 1996), Gorlikowski v. Tolbert, 51 F.3d 1439, 1443-44 (7th Cir. 1995) and other cases cited in each of those opinions).

In this instance the FPTO was crafted in meticulous detail by highly qualified counsel. Its Ex. 2(b) set out with obvious

care both the agreed and nonagreed issues of fact and issues of law to be resolved at trial. And what is conspicuous by its absence from those detailed listings is any reference to a mitigation defense--an absence made more striking by the many other issues that College chose to include in that laundry list.[2]

Despite that omission (which would alone call for an at-trial ruling barring the attempted introduction of such evidence, even if no motion in limine had been filed), College says it should be allowed to challenge Strauch in two respects. One would argue that Strauch did not make adequate efforts to search for a new job post-termination, and the other would point to Strauch's failure to post security to obtain the lump sum pension payment at issue in the case. Interestingly, although both sides seek to call the decision in United States v. Tokash, 282 F.3d 962, 967 (7th Cir. 2002) to their aid, this Court's review of that opinion's general discussion of affirmative defenses suggests that it provides little comfort to either side under the very different circumstances involved here.

As to the first matter complained of by College, it has proffered no evidence of its own in any event, proposing to rely instead on some of Strauch's deposition testimony (Dep. 127:24 to

---

[2] If the FPTO had been limited instead to <u>agreed</u> issues of fact and law, College might perhaps contend that the parties' difference of views on the subject accounted for the absence of any reference to mitigation. But the separate FPTO listing of "disputed" matters (preceded by the statement that "The parties could not agree on whether the following issues are appropriate for resolution at trial") forecloses any argument of that sort.

4

129:24). This Court has reviewed that testimony, and it is really insufficient to support an argument as to the inadequacy of the nearly-70-year-old Strauch's efforts to find other alternative employment for the short-term period until his expressly-contemplated date of retirement. In candor, any contention in that respect is such a slim reed that it is not to be wondered that College's counsel left it out of the FPTO.

As for Strauch's asserted failure to post security, it must be remembered that the evidence previously identified for consideration by this Court is that before College insisted that Strauch had to do so it had imposed no such requirement on anyone else as the price of a lump sum benefit distribution from the Plan--and that such lump sum distributions had indeed been made to others without any such requirement. And Strauch is right in stating that neither the Treasury Regulation nor the Revenue Ruling on which College and the Plan seek to rely imposes any such obligation on employee benefit plan participants.

Moreover, it is uncontested that if College and the Plan wished to avoid any possible loss of its qualification for tax purposes, College had ample funds to maintain the Plan's funding level at the required 110% of its assets or to post any required security that the Treasury Regulation or Revenue Ruling might require. Any response that seeks to divert the consideration of such matters by recharacterizing the issue as a failure of mitigation is even more attenuated than the other matter just

discussed, and again it is unsurprising that College's counsel left the subject off of the list of contested issues.

In sum, Strauch's third motion is limine is granted. No evidence of the type it seeks to bar may be proffered at trial.

Strauch's fourth motion (Dkt. No. 91-1), captioned "Retirement Plan Issues," is closely related to the just-discussed third Strauch motion. Accordingly it is necessary to discuss only two additional matters raised by the fourth motion.

For one thing, there is no dispute that College "has at all times had sufficient assets and/or resources to fund the Plan so that Plan's current assets were equal to or exceeded 110% of current liabilities in order to enable Strauch to receive the lump sum distribution of retirement benefit as requested" (FPTO Ex. 2(a) ¶44). From that premise Strauch seeks a ruling that no legal impediment prevented College, as both employer and Plan sponsor, from posting any security or providing any funding that would be needed to allow the lump sum distribution to Strauch while still retaining Plan's tax-qualified status. Neither College nor the Plan really takes issue with that position, urging instead that College had no legal obligation to act as Strauch contends it should have. Although College says that demonstrates Strauch's misstatement of its position, it seems plain that College has in turn impermissibly recharacterized Strauch's position.

In short, Strauch's motion will be granted in the respect

6

just discussed, but without preventing either side (1) from arguing that the other should have provided the wherewithal to allow the lump sum distribution without sacrificing the Plan's tax qualification or (2) from responding that the Internal Revenue Code and its regulations imposed no obligation to do so. Again the issue is whether College's failure to take any such steps, as it had the power and ability to do, constituted retaliation for Strauch's complaints of age discrimination.[3]

Next, Dkt. No. 91-1 also seeks to bar evidence as to College's handling of a request for lump sum distribution made by Joanne Sylvester ("Sylvester") <u>after</u> the denial of Strauch's request for his own distribution. College responds that its assertion that Sylvester had to post security demonstrates a consistency of treatment on its part once it realized the legal requirements for continued Plan qualification (of which it had assertedly been unaware earlier). In that regard College points out that the requirement directed to Sylvester antedated Strauch's filing of his retaliation claim, so it contends that

---

[3] Defendants' Mem. 13 misleadingly states that Treasury Regulation (actually Revenue Ruling) 92-76 "explicitly states" that an employee in such circumstances "shall post security." Not at all. What the Revenue Ruling states instead (unsurprisingly) is that a plan that contains an express provision for an employee's escrow deposit or bond or letter of credit does not violate the applicable Treasury Regulation, something far different from a ruling that employees have the legal <u>obligation</u> to do so if a plan contains no such requirement. And here, of course, the Plan lacks any such requirement. That leaves the issue to be resolved in this case in the manner already identified in the text.

any argument that it was improperly attempting to insulate itself against Strauch's argument would have less (or perhaps even no) force.

In this instance it cannot be said that evidence as to the Sylvester situation is devoid of any probative force as a matter of law. It will be admissible in evidence, but with each side's able counsel entitled to argue the matter--on the one hand (Strauch's) that College's response to Sylvester's request was simply an effort to paper over College's retaliatory conduct as to Strauch (even though no formal claim of retaliation had yet been filed, Strauch may urge that the pre-Sylvester existence of this lawsuit and the clearly known areas of dispute between the parties made the issue an obvious one) and on the other hand (College's) that it was dealing with retirees consistently.

In short, both aspects of Strauch's fourth motion will permit the subjects they address to be considered at trial. As the motion is framed, that calls for the granting of the first branch of Strauch's motion and the denial of its second branch.

Strauch's fifth motion (Dkt. No. 92-1) seeks to preclude the introduction of evidence as to the qualifications of the individuals who were hired to replace him. In that respect it is important to remember that College has consistently taken the position that the decision to terminate Strauch's employment (prematurely, as he would have it) was <u>not</u> related to his performance, a position that was set out in College's answer to

8

Strauch's interrogatory on that subject and was reconfirmed at several points in the FPTO's statement of uncontested facts (Ex. 2(a) ¶¶14 and 15).

College irritatingly attempts to take an end run around its own commitments on that score by asserting (Response Mem. 16) that Strauch "was not, at the time of his termination, fully qualified for the remaining position" and then attempting to bum-rap him in comparative terms vis-a-vis his replacements. That really ignores the issues in this case: whether, for example, College's handling of the proposed Reorganization in a fashion and with timing that called for Strauch's assertedly premature departure was age-discriminatory, or perhaps whether in the absence of age discrimination College should have--despite any accelerated hiring and training of replacements--worked things out to accommodate Strauch's announced plans for retirement. In any event, just as this opinion has earlier ruled that Strauch may not particularize as to the quality of his own performance, so too College may not engage in the just-described end run. Strauch's fifth motion is also granted.

Strauch's sixth motion (Dkt. No. 93-1) is captioned "Deviation from Deposition Testimony" and seeks to preclude College's witness, Dr. Thomas Russell, from altering his original deposition testimony in two respects to conform to the revised versions that emerged only after what Strauch's counsel has labeled as coaching by College's counsel during breaks in the

9

Russell deposition. This Court has already expressed its views as to the impropriety of the so-called "clarifications" by Russell, a euphemism that would mask what really amounted to changes in his previously sworn answers. It adheres to that view.

At the same time, this Court certainly wishes to avoid any presentation to the jury that would tend to muddy up defense counsel by reference to such coaching and thus create a possibly unfair disadvantage for College in consequence of such a collateral issue. This Court therefore expects that Russell will be instructed in advance of testifying at trial that his testimony is to be in accordance with his earlier (pre-"clarification") deposition testimony on the two subjects at issue. If he were not to do so, the original deposition testimony would become available to Strauch's counsel by way of impeachment--but Strauch's counsel will not be permitted in that respect to argue then that any different version was assertedly concocted for Russell's presentation at trial, for such an argument would in turn open up the admissibility of what would then become a prior consistent statement (that is, the revised "clarification" after Russell had conferred with defense counsel during the course of the deposition).

Finally, Strauch's seventh motion (Dkt. No. 94-1) seeks to bar the trial testimony of Dr. Margaret Mooney ("Mooney") as not previously disclosed in appropriate fashion (College has listed

10

Mooney as a "may call" witness in FPTO Ex. 2(d)). This dispute does not bear upon Strauch's termination, but rather on the termination of Dr. Olga Jonasson ("Jonasson").

In that regard Strauch says that in response to his request for the reasons for Jonasson's termination and for the identity of "each and every individual with knowledge or information relating to the reasons for" such termination, College stated only that Jonasson was terminated as a result of the Reorganization and has identified only Russell, Gay Vincent and Jean DeYoung as having knowledge of such reasons. College's Response Mem. 23 sets out this lawyerlike quibble:[4]

> Plaintiff's argument fails because Plaintiff has never sought a list of individuals who could offer factual information relating to Dr. Jonasson's job performance issues. The interrogatory Plaintiff cites (Motion at p.2) requested the identity of individuals with "knowledge or information relating to the reasons for" (emphasis added) the termination of a number of other former employees of the College, including Dr. Jonasson. The interrogatory did not request the identity of all individuals who could attest to any facts supporting those termination decisions. Dr. Mooney was not involved in Dr. Jonasson's termination or the decision to restructure her position, and to Defendants' knowledge does not know the reason for Dr. Jonasson's discharge.

That attempted distinction is entirely unpersuasive. It is not at all an answer for College to say that Mooney, who was assertedly knowledgeable of performance deficiencies on

---

[4] This Court normally views and uses "lawyerlike" as a complimentary term. That however is obviously not the case here, where it is coupled with "quibble"--a noun with obviously pejorative content.

11

Jonasson's part, was not someone with "knowledge or information relating to the reasons for" Jonasson's termination, where such termination was in fact attributed to such performance deficiencies--where those <u>were</u> stated by College to be "the reasons for" her termination. It is irrelevant that Mooney was not herself a decisionmaker in that respect or that she does not know that Jonasson's discharge was, in the decisionmakers' view, caused by such deficiencies. Strauch's seventh motion is granted as well.

### College's Motions

Initially College, invoking Fed. R. Evid. ("Rule") 408, seeks to preclude testimony about settlement negotiations between counsel after Strauch's termination (Dkt. No. 87-1). But Strauch properly responds that Rule 408 is not in play here because the challenged evidence is not offered "to prove liability for or invalidity of the claim or its amount" (the language of the Rule), but rather as "proof of retaliation and [to] demonstrate[ ] that defendants were not legally precluded from providing Dr. Strauch with his Plan benefits" (Strauch Response Mem. 1). In that respect Strauch points to some of Russell's deposition testimony as well as to other evidence related to the settlement discussions that assertedly supports a claim of retaliation.

This Court does not of course take any substantive position on the retaliation claim, something that will be for the jury to

12

resolve. But it is plain that the jury should have access to the evidence for that purpose. College's initial motion is denied.

Next College asks to bar as hypothetical any testimony as to what College "would have done" if Strauch had not stated his intention to retire (Dkt. No. 87-2). But that issue--the question whether Russell's handling of the timing and his implementation of the Reorganization were impacted by Strauch's statement as to anticipated retirement--is not at all hypothetical or speculative. Instead it is for the jury to determine whether the answers to that line of inquiry do or do not support Strauch's age discrimination claim. That motion is also denied.

Next College asks that evidence of discovery disputes that arose during the course of the litigation be excluded from admissibility at trial (Dkt. No. 87-3). But if and to the extent that such matters might be viewed by a reasonable factfinder as evidencing retaliation, such a prohibition would be inappropriate--and hence a blanket ruling of the type sought by College and the Plan is inappropriate. And Strauch's Response Mem. 15-22 urges persuasively that the matters referred to there may be relevant to the issues of wilfulness and possible impeachment. Accordingly that motion is denied in its generic form, without prejudice to its reassertion in a more particularized form as the issue may arise during the course of trial.

College offers as a fourth motion (Dkt. No. 87-4) the contention that Strauch should not be permitted to argue that he has been harmed by (1) the alleged delay in payment of his benefits under the Severance Pay Plan or (2) the failure to pay a lump-sum benefit under the Staff Members' Retirement Plan (except, in the latter regard, as to Strauch's having to incur attorneys' fees to obtain the payment). To that end College attempts to rely on Strauch's abandonment of any claim of lost income and investment opportunities and interest incurred for personal loans that he took out when payment was not made.

But it is one thing for Strauch to disclaim an effort to obtain damages quantified in that fashion and quite another to prevent Strauch from complaining that such conduct by College and the Plan was retaliatory and hence unlawful. That evidence may be put before the jury, and it remains for the time of trial to consider just how the issue may be posed in terms of its resolution of the issues. Again the motion in its generic form is denied.

Next College seeks to bar any introduction of evidence as to the failure to pay Strauch severance benefits under College's Severance Policy (Dkt. No. 87-5). That motion is puzzling, both because such a claim is clearly relevant to Strauch's age discrimination claim[5] and because Strauch's response to the

---

[5] In that respect Strauch's obvious claim (at his Response Mem. 25) is that but for his assertedly illegal termination Strauch would have retired on November 1, 2002 and received

14

College-Plan written interrogatories expressly included such benefits in Strauch's damages calculation--indeed, defense counsel specifically interrogated Strauch in that respect during his deposition (Dep. 185:12 to 187:3). That surprising motion is denied.[6]

College's next two motions (Dkt. Nos. 87-6 and 87-7) seek to bar introduction of evidence as to the job performance and termination of Jonasson and Lynch (both of whom were terminated on the same day as Strauch). If and to the extent that Strauch were to seek the admissibility of such evidence in the broad form just stated (thus essentially creating some mini-trials that could deflect attention from the real issues in this litigation), the motions would be granted. But analysis confirms that the blunderbuss motions should be denied in the limited respects next discussed.

First, this Court has held in its February 3, 2004 memorandum opinion, and reconfirms here, that Russell's comments

---

benefits under the Severance Policy. Although to be sure College asserts that the payment of such benefits is discretionary, that clearly does not prevent College from being held liable if its denial of such benefits to Strauch were found to be age-related.

[6] College attempts to bolster its motion by pointing to the provision of the Severance Policy that an employee must sign a release to receive such benefits, and Strauch did not of course sign such a release. But that contention ignores all of the other aspects of Strauch's claim, for the absence of a release as to this facet of his claim is necessarily and obviously related to the unreasonableness of expecting the surrender of all those other aspects of Strauch's claim by signing a release to get payment of this item.

15

to (or as to) Jonasson and Lynch that a rational factfinder might consider as age-oriented are admissible because they might be viewed as probative regarding College's motivation. That does not, however, extend to the admissibility of Jonasson's own opinion that her discharge was age-related--something as to which the jury must reach its own decision on the basis of the Russell statements and other relevant facts that might be elicited from Jonasson.

What has been said as to Jonasson also applies to Lynch. In that respect, though College's position is that he departed voluntarily, Strauch has identified evidence (including Lynch's separation agreement) that puts that characterization at issue.

Next College and the Plan seek to bar any evidence about their respective assets (Dkt. No. 87-8). On that score they point to their stipulation in the FPTO "that at all times the College has owned sufficient assets to fund the Plan at 110% in order to allow Plaintiff's lump-sum payout" (Motions Mem. 20). Strauch's Response Mem. 31 agrees that the issue should be rendered moot if the stipulation occupies this somewhat broader scope:

    1. that Strauch's termination was not related to College's financial condition;

    2. that College's financial condition was such that it could have without hardship funded the Plan in an amount equal to 110% of liabilities (or alternatively could have,

16

again without hardship, posted the requisite security) to allow lump sum distribution of Strauch's benefits; and

    3. that College's financial condition (and the financial condition of the Plan) is such as to enable them to pay without hardship any liquidated damages that may be awarded.

That modest expansion seems entirely reasonable, and with those matters being conveyed to the jury this Court will treat the motion as moot.

College's penultimate motion (Dkt. No. 87-9) seeks to limit the introduction and use of documents that have previously been disclosed on a "for counsel's eyes only" basis pursuant to the protective order entered on September 25, 2002. Strauch properly responds that any such blanket ruling would be premature, with the admissibility of any such document to be considered only as and when offered (something that has not yet been done) in the trial context. Accordingly the motion is denied, but obviously without prejudice to its potential reassertion as and when any such issue may arise at trial.

In like fashion, College and the Plan advance their final motion (Dkt. No. 87-10), this time seeking an order "to limit and/or redact certain exhibits to preserve third-party confidentiality and/or exclude irrelevant issues" (Motions Mem. 27). They then list a half-dozen documents that Strauch has identified as exhibits in the FPTO, but without specifying

particular redactions.

Here too Strauch correctly answers (Response Mem. 33-34) that any evidentiary rulings on that score should be deferred until they may be viewed in the trial matrix. What College and the Plan have advanced does not bear on the admissibility of the exhibits as such, and the relevant particulars can best be judged at trial. Accordingly this last motion is also denied without prejudice to a more particularized renewal at trial.

## Conclusion

What is set out in this brief concluding section is not, of course, intended to modify the detailed treatment that has gone before. Instead it serves only as a capsule (and hence imprecise) summary of the rulings in this opinion.

As to the Strauch motions:

1. Dkt. Nos. 88-1, 89-1, 90-1, 92-1, 93-1 and 94-1 are granted.

2. Dkt. No. 91-1 is granted in part and denied in part.

As to the College motions:

1. Dkt. Nos. 87-1, 87-2 and 87-5 are denied.

2. Dkt. No. 87-4 is denied in the generic form in which it has been presented.

3. Dkt. Nos. 87-3, 87-9 and 87-10 are denied without prejudice to their possible reassertion in more particularized form at trial.

4. Dkt. Nos. 87-6 and 87-7 are granted in part and denied in part.

5. Dkt. No. 87-8, as modified, is denied as moot.

Finally, as to all of the foregoing rulings that have been framed in definitive form, see the last sentence of Rule 103(a).

_____
Milton I. Shadur
Senior United States District Judge

Date: February 18, 2004