# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3314 | **DATE** | 11/9/2004 |
| **CASE TITLE** | Gerald O. Strauch vs. American College of Surgeons | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. As to Third Amended Complaint Counts II and V, Strauch's Rule 56 motion is denied, but this Court commends to the parties' counsel a prompt evaluation of this Court's concern that the trial of that small snippet of Dr. Strauch's total claims could be nonproductive because of the potential for a Rule 59 ruling if the jury were to go College's way. As to Counts VI and VII, however, there is no genuine issue of fact, and Strauch is entitled to a judgment as a matter of law. (114-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 1 2 2004 | 123 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/9/2004 date mailed notice | |
| SN | courtroom deputy's initials | | Date/time received in central Clerk's Office | SN mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GERALD O. STRAUCH, M.D.,          )
                                  )
                  Plaintiff,      )
                                  )
        v.                        )     No. 02 C 3314
                                  )
AMERICAN COLLEGE OF SURGEONS,     )
et al.,                           )
                                  )
                  Defendants.     )

MEMORANDUM OPINION AND ORDER

After this case had reached the final pretrial order ("FPTO") stage so as to be ready for trial, and after the originally scheduled trial date had to be deferred to permit some additional discovery, counsel for plaintiff Dr. Gerald Strauch expressed the view that the trial could be streamlined materially if certain of Dr. Strauch's multiple claims against defendants American College of Surgeons ("College") and its Staff Members' Retirement Plan ("Plan")[1] were susceptible to resolution via summary judgment as a matter of law. Based on its extensive treatment of various issues in its earlier opinions and rulings, this Court considered such an effort worth exploring.

---

[1] As was done in past opinions, this opinion will avoid the constant and cumbersome repetition of "College and the Plan" by simply using "College" (treated as a singular noun) as a collective term denoting both defendants. And because this is not the first opinion in the case dealing with a summary judgment motion (see this Court's February 3, 2004 memorandum opinion and order, 301 F.Supp.2d 859, cited as "Feb. 3 Op. at --"), this opinion will employ the same abbreviations in referring to the litigants' submissions on the current motion.

Accordingly the parties have complied with this District Court's LR 56.1 in addressing Dr. Strauch's Counts III, V, VI and VII in his Third Amended Complaint ("TAC"). With the final memorandum now in hand, this Court finds Dr. Strauch's motion as to those claims to be ripe for decision.

## Counts III and V

One area of dispute between the parties stems from College's nonpayment of any compensation for the services that Dr. Strauch rendered between December 31, 2001 (the date that College has treated as the termination date of his employment) and January 11, 2002 (the date when College caused his building pass to be deactivated and he ceased work). Dr. Strauch has testified that he continued to provide the same services during that stub period that he had been providing up to December 31, and with College having offered no evidence to the contrary (or even a whisper of evidence that could create a contrary inference), there is no genuine issue of material fact on that score.

As for Dr. Strauch's entitlement to compensation for that brief period, College seeks to rely on its original December 7, 2001 notification to Dr. Strauch that his employment would terminate December 31. But it is undisputed that the December 7 notification was far from the end of the story. Instead discussions between the parties continued, and on December 19 College sent Dr. Strauch a memo reflecting an offer to continue

2

their relationship under a proposed consulting agreement (a document that accompanied the memo). There was further back and forth, with Dr. Strauch making a counterproposal on January 2. In turn College transmitted alternative proposals--a consulting agreement and a severance agreement--on January 8, with a statement in the forwarding letter that Dr. Strauch had to respond by January 11 (that January 8 communication is what led to the final physical severance on January 11).[2] And as stated earlier, all the while Dr. Strauch was continuing to perform the ongoing assignments that Dr. Russell has acknowledged that he had given Dr. Strauch during the prior year as his continuing responsibilities.

When Dr. Russell was questioned on that score during his deposition, he originally admitted that Dr. Strauch was entitled to be paid for the stub period in question. Then after a break in the deposition, during which he consulted with College's counsel, Dr. Russell changed his story via a purported

---

[2] It is true that the January 8 memorandum from College's Chief Executive Officer, Dr. Thomas Russell, said that Dr. Strauch's nonacceptance would lead to his being shown on College's records as terminated effective December 31, 2001 with no severance benefits. But whether that retroactive ukase is to be given effect is of course a function of where the parties' discussions had placed them before that date. In that regard, this Court's brief summary reference to a December 31, 2001 termination in Feb. 3 Op. at 843 was neither an evidentiary finding nor a legal conclusion. Indeed, College has consistently (to and including the present) recognized that as one of the hotly contested issues between the parties, hence incapable of resolution in the summary judgment context.

"clarification" that really reversed his field. That switch became the subject of a motion in limine by Dr. Strauch, which led to this ruling as part of this Court's February 19, 2004 memorandum opinion and order, 2004 WL 524442 (cited "Feb. 19 Op.") at *4-*5:

> Strauch's sixth motion (Dkt. No. 93-1) is captioned "Deviation from Deposition Testimony" and seeks to preclude College's witness, Dr. Thomas Russell, from altering his original deposition testimony in two respects to conform to the revised versions that emerged only after what Strauch's counsel has labeled as coaching by College's counsel during breaks in the Russell deposition. This Court has already expressed its views as to the impropriety of the so-called "clarifications" by Russell, a euphemism that would mask what really amounted to changes in his previously sworn answers. It adheres to that view.
>
> At the same time, this Court certainly wishes to avoid any presentation to the jury that would tend to muddy up defense counsel by reference to such coaching and thus create a possibly unfair disadvantage for College in consequence of such a collateral issue. This Court therefore expects that Russell will be instructed in advance of testifying at trial that his testimony is to be in accordance with his earlier (pre-"clarification") deposition testimony on the two subjects at issue. If he were not to do so, the original deposition testimony would become available to Strauch's counsel by way of impeachment--but Strauch's counsel will not be permitted in that respect to argue then that any different version was assertedly concocted for Russell's presentation at trial, for such an argument would in turn open up the admissibility of what would then become a prior consistent statement (that is, the revised "clarification" after Russell had conferred with defense counsel during the course of the deposition).

It appears from what College has said in its C. St. ¶¶18-20 that its counsel do plan to proceed by relying on Dr. Russell's

4

"clarification" (something that is not barred by the last-quoted ruling, although the jury would be entitled to be informed as to the circumstances under which the "clarifying" statement was made). That being so, the Fed. R. Civ. P. ("Rule") 56 requirement of accepting College's factual version, drawing all reasonable inferences in its favor, seems--as hollow as the "clarification" explanation rings--to preclude the granting of Dr. Strauch's motion as a matter of law (even though Dr. Strauch's last filing has taken the contrary position even if College's stance were to be adopted arguendo, and even though the Rule 56 question is certainly a close one).

But this Court would be remiss if it failed to note the difference between the standard under Rule 56 (paralleled under Rule 50 when the same evidence is viewed at trial) and the standard under Rule 59. If in response to a written interrogatory as to Counts III and V the jury were to rule in College's favor, and if the trial evidence had mirrored what has been proffered to this Court, the standard applicable on a motion for new trial on that score would be very different: whether the jury's verdict was against the clear (often phrased as "manifest") weight of the evidence (among the host of cases from all Circuits so holding, see, e.g., Gen. Foam Fabricators, Inc. v. Tenneco Chems., Inc., 695 F.2d 281, 285, 288 (7th Cir. 1982) and, two decades later, ABM Marking, Inc. v. Zanasi Fratelli,

"clarification" (something that is not barred by the last-quoted ruling, although the jury would be entitled to be informed as to the circumstances under which the "clarifying" statement was made). That being so, the Fed. R. Civ. P. ("Rule") 56 requirement of accepting College's factual version, drawing all reasonable inferences in its favor, seems--as hollow as the "clarification" explanation rings--to preclude the granting of Dr. Strauch's motion as a matter of law (even though Dr. Strauch's last filing has taken the contrary position even if College's stance were to be adopted arguendo, and even though the Rule 56 question is certainly a close one).

But this Court would be remiss if it failed to note the difference between the standard under Rule 56 (paralleled under Rule 50 when the same evidence is viewed at trial) and the standard under Rule 59. If in response to a written interrogatory as to Counts III and V the jury were to rule in College's favor, and if the trial evidence had mirrored what has been proffered to this Court, the standard applicable on a motion for new trial on that score would be very different: whether the jury's verdict was against the clear (often phrased as "manifest") weight of the evidence (among the host of cases from all Circuits so holding, see, e.g., Gen. Foam Fabricators, Inc. v. Tenneco Chems., Inc., 695 F.2d 281, 285, 288 (7th Cir. 1982) and, two decades later, ABM Marking, Inc. v. Zanasi Fratelli,

S.R.L., 353 F.3d 541, 545 (7th Cir. 2003)). To that end this Court would be entitled to consider the nature and circumstances of the Dr. Russell "clarification" (a euphemism, as already stated) in the course of evaluating the clear weight of the evidence, and from the present perspective that would mean the issue would have to be retried.[3]

## Count VII

As a result of the current motion this Court has taken a fresh look at the issue of Dr. Strauch's claim based on College's refusal to honor his election to receive his pension funds under the Plan in a lump sum. It acknowledges with regret that in looking at College's effort to resist Strauch's motion (Dkt. No. 91-1) in Feb. 19 Op. at *3, this Court succumbed to what further study and analysis discloses to be a total red herring.[4]

---

[3] In that respect, College's contention that Dr. Strauch cannot prevail without "an employment contract or agreement" (820 ILCS 115/2) is a nonstarter. For that purpose it is of course obvious that at-will employment satisfies the statutory language (indeed, the Illinois Wage Payment and Collection Act would otherwise be a toothless tiger for the rank and file workers who most need its protection). And the entire discussion in the text, based on the manifest weight of the evidence proffered to this Court, supports an ongoing at-will relationship for Dr. Strauch during the short post-December 31, 2001 period.

[4] That figure of speech is particularly apt here, given its origin as the traditional means of throwing the hounds off of the scent in their pursuit of the fox. As has unfortunately been the case with too much of College's litigation strategy and too many of College's arguments advanced during the course of this litigation, College's contention on this subject has proved to be a classic instance of what has been termed the fox-hunt or sporting theory of litigation, in which false issues are advanced

6

Let us then begin anew. Dr. Strauch had an absolute and unrestricted right to a lump sum distribution of his retirement benefits: By its February 5, 1999 Amendment to the Plan, College amended Plan §6.4(c) effective January 1, 1999 to create such an absolute right (before that amendment, lump sum treatment was available only to participants whose Accrued Benefit determined in accordance with Internal Revenue Code §417(e) had a present value of $25,000 or less). And College indeed admitted that in its Answer ¶81 to the TAC and admits it once again in its C. St. ¶23.

That being the case, College had no right whatever to respond as it did to Dr. Strauch's election by imposing a condition that he post security (or, for that matter, by imposing any other condition) before it made the required prompt payment of his retirement benefits under the Plan. To be sure, if College did not take some action to address the actuarial sufficiency of the remaining Plan assets to avoid an adverse tax consequence, it might have faced the possible loss of tax qualification for the Plan. But that was College's problem, not Dr. Strauch's.

Here is what Feb. 19 Op. at *2-*3 said, with total accuracy, on the subject:

---

to obscure the search for truth that should be the goal of every litigated dispute.

7

> As for Strauch's asserted failure to post security, it
> must be remembered that the evidence previously
> identified for consideration by this Court is that
> before College insisted that Strauch had to do so it
> had imposed no such requirement on anyone else as the
> price of a lump sum benefit distribution from the
> Plan--and that such lump sum distributions had indeed
> been made to others without any such requirement. And
> Strauch is right in stating that neither the Treasury
> Regulation nor the Revenue Ruling on which College and
> the Plan seek to rely imposes any such obligation on
> employee benefit plan participants.
>
> Moreover, it is uncontested that if College and the
> Plan wished to avoid any possible loss of its
> qualification for tax purposes, College had ample funds
> to maintain the Plan's funding level at the required
> 110% of its assets or to post any required security
> that the Treasury Regulation or Revenue Ruling might
> require.

But Feb. 19 Op. at *3 then went on to posit the presentation of the question as a jury issue at trial:

> For one thing, there is no dispute that College "has at
> all times had sufficient assets and/or resources to
> fund the Plan so that Plan's current assets were equal
> to or exceeded 110% of current liabilities in order to
> enable Strauch to receive the lump sum distribution of
> retirement benefit as requested" (FPTO Ex. 2(a) ¶44).
> From that premise Strauch seeks a ruling that no legal
> impediment prevented College, as both employer and Plan
> sponsor, from posting any security or providing any
> funding that would be needed to allow the lump sum
> distribution to Strauch while still retaining Plan's
> tax-qualified status. Neither College nor the Plan
> really takes issue with that position, urging instead
> that College had no legal obligation to act as Strauch
> contends it should have. Although College says that
> demonstrates Strauch's misstatement of its position, it
> seems plain that College has in turn impermissibly
> recharacterized Strauch's position.
>
> In short, Strauch's motion will be granted in the
> respect just discussed, but without preventing either
> side (1) from arguing that the other should have
> provided the wherewithal to allow the lump sum

8

distribution without sacrificing the Plan's tax
qualification or (2) from responding that the Internal
Revenue Code and its regulations imposed no obligation
to do so. Again the issue is whether College's failure
to take any such steps, as it had the power and ability
to do, constituted retaliation for Strauch's complaints
of age discrimination.[3]

---

[3] Defendants' Mem. 13 misleadingly states that
Treasury Regulation (actually Revenue Ruling) 92-76
"explicitly states" that an employee in such
circumstances "shall post security." Not at all. What
the Revenue Ruling states instead (unsurprisingly) is
that a plan that contains an express provision for an
employee's escrow deposit or bond or letter of credit
does not violate the applicable Treasury Regulation,
something far different from a ruling that employees
have the legal <u>obligation</u> to do so if a plan contains
no such requirement. And here, of course, the Plan
lacks any such requirement. That leaves the issue to
be resolved in this case in the manner already
identified in the text.

On further consideration such prospective treatment was mistaken, for it would give College far more than it is entitled to as a matter of law. Rev. Rul. 92-76 cuts directly against College's position, rather than providing it any support (as College would have it): Because under that 1992 Ruling it would have been legally permissible for the Plan to have imposed a requirement for an employee's posting of security, and because the Plan was amended in 1999 (some seven years later) to confer an <u>unfettered</u> right on the employee's part to lump sum distribution <u>without</u> imposing any such requirement,[5] it was

---

[5] In 2002 Plan's auditors--even before Dr. Strauch requested his retirement benefits--confirmed that no such requirement existed under the Plan and advised College that it

9

impermissible for College or the Plan to attempt to place such an unauthorized burden on Dr. Strauch.

It should again be emphasized that if College wished to maintain the Plan's tax qualification (a matter plainly not Dr. Strauch's responsibility at all), it had more than ample resources and more than ample time to do so. Most importantly, College's counsel are dead wrong in mischaracterizing a payment of lump sum benefits, as mandated under the Plan, to be barred somehow by the Internal Revenue Code if the payment were unaccompanied either by an actuarially calculated funding of the Plan or by the posting of security--instead such things were simply the price that had to be paid if the Plan's favored tax treatment were to be maintained.

In short, whatever the Feb. 19 Opinion may heretofore have indicated as expressing a different view of this aspect of the dispute between the parties, this Court now holds unequivocally that College violated Dr. Strauch's unambiguous right under the Plan to receive a lump sum payment of his accrued retirement benefit without the imposition of any condition. It is thus unnecessary for Dr. Strauch to rely on any argument of disparate treatment based on the fact that College had paid others without

---

could fund the Plan to preserve its tax qualification when the lump sum payment to Dr. Strauch was made. Moreover, College was told by the auditor that it had several months to provide that funding (which, as stated earlier, was well within its power).

10

seeking their posting of security, as it demanded of Dr. Strauch. Instead such payments to others must be viewed as having been made in simple compliance with College's <u>duty</u> under Plan §6.4(c), a duty that College flouted when it came Dr. Strauch's turn to be paid.

Hence the attempt to impose an extralegal condition on Dr. Strauch's absolute right under the Plan to lump sum payment was arbitrary and capricious (sometimes phrased as "downright unreasonable") as a matter of law (see, e.g., <u>Carr v. Gates Health Care Plan</u>, 195 F.3d 292, 294 (7th Cir. 1999)), for the unambiguous and controlling language of the Plan (see, e.g., <u>Cozzie v. Metro. Life Ins. Co.</u>, 140 F.3d 1104, 1109 (7th Cir. 1999)) expressly gave Dr. Strauch that absolute right. There is no question, then, that College's conduct (actually misconduct) in connection with the nonpayment of Dr. Strauch's retirement benefits was a flat-out violation of the Plan's provision entitling Dr. Strauch to the distribution--and the prompt distribution--of those benefits. There is no genuine issue of material fact in that respect, and Dr. Strauch is accordingly entitled to a judgment as a matter of law on TAC Count VII, the gravamen of which is simply the violation of the Plan. What remains for decision on Count VII is the quantification of Dr. Strauch's damages and other types of recovery stemming from that violation.

Count VI

In part TAC Count VI draws from the same well as Count VII. It charges College with having done what it did in the nonpayment or delayed payment of Dr. Strauch's entitlements in retaliation for his having pursued his ADEA claims against College. And Strauch adds to that retaliation claim regarding Dr. Strauch's retirement benefits by charging that College's delay in paying his Severance Pay Plan benefit (some $200,000, while the retirement benefit was four times as large) was similarly motivated.

As for a showing of retaliatory motive, it is difficult to conceive of anything more probative than the testimony by which Dr. Russell, who was not only College's Chief Executive Officer but also one of the Plan's two trustees (the other was one of his subordinates, the College Comptroller, who Dr. Russell testified reports both to him and to the Board of Regents[6]), said during his deposition to explain his different treatment of Dr. Strauch (as against the treatment of others who were not confronted with roadblocks to their receipt of like entitlements):

> Well, he was suing the College. I mean, that's a pretty basic difference.[7]

---

[6] Dr. Russell also testified that he had the authority to fire the Comptroller, although she testified otherwise.

[7] [Footnote by this Court] On that occasion Dr. Russell was not rescued by a break in the deposition that could give him the opportunity to confer with counsel and then come up with a

12

Dr. Strauch is right: College's Plan-violative conduct in blocking his immediate right to obtain his retirement benefit under the Plan, and in tying such blockage to Dr. Strauch's having brought this lawsuit, was clearly retaliatory (see 29 U.S.C. §623(d)). And that characterization is strongly fortified by College's attempt to hold out to Dr. Strauch the prospect of withdrawing that impermissible condition as a "bargaining chip" (a poor metaphor, considering the enormous size of that benefit) to induce him to give up his claims. All of that being so, Dr. Strauch is entitled to a judgment as a matter of law on that facet of TAC Count VI.

As for the service benefit issue, the matter would be more complex if Dr. Strauch had to prevail on that score as well to support summary judgment on his retaliation claim. College correctly asserts that the Severance Pay Plan gave it a two-year period within which it could pay that benefit, and it did in fact pay within that time frame. For his part Dr. Strauch urges that another employee, Dr. Olga Jonasson, was paid her benefit under the Severance Pay Plan less than 30 days after her termination date (with the benefit having been approved by College's Executive Committee the first time that the matter was raised), while Dr. Strauch's was withheld for nearly six months.

Moreover, here too Dr. Russell engaged in a purported

---

so-called "clarification."

"clarification" during his deposition. Initially he testified that the holdback of Dr. Strauch's Severance Plan savings was to "buffer" him to a retirement on terms that College found acceptable, but once again Dr. Russell later backed away from that earlier position.

But it is unnecessary to parse the Severance Pay Plan issue separately. Although its obvious thrust would be to support the conclusion already reached as to College's retaliatory motive and conduct, what is controlling is that even if College's spin on the subject were to be accepted it would not impair what has already been held here as to the unquestionably retaliatory nature of College's treatment of Dr. Strauch's retirement benefits.

In sum, once more there is no genuine issue of fact, and Dr. Strauch is entitled to a judgment as a matter of law on his claim of unlawful retaliation. As with TAC Count VII, what remains under Count VI is to determine the scope of Dr. Strauch's remedies for that misconduct.

## Conclusion

As to TAC Counts III and V, Strauch's Rule 56 motion is denied, but this Court commends to the parties' counsel a prompt evaluation of this Court's concern that the trial of that small snippet of Dr. Strauch's total claims could be nonproductive because of the potential for a Rule 59 ruling if the jury were to

14

go College's way. As to TAC Counts VI and VII, however, there is no genuine issue of fact, and Strauch is entitled to a judgment as a matter of law. All further proceedings on those disposed-of counts should be the subject of prompt discussions between counsel, so that they and this Court can consider that subject in conjunction with the contemplated resetting of the balance of Strauch's case for trial.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 9, 2004